James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI and 06-7270 SI; 07-02507 SI; 07-02508 SI; 07-02509 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

DECLARATION OF EDWARD EHEE IN SUPPORT OF IN SUPPORT OF EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

EDWARD SEWON EHEE declares:

1. I am the debtor in one of the above-captioned bankruptcy cases.

2. I am the record owner of 6122 Acacia Ave., Oakland, California subject to any unrecorded community property interest of my wife Jennifer Ehee, if any.

3. I have marketed the property through Bay Properties a licensed real estate broker. I have no other connection with Bay Properties or its agents.

4. I have accepted and am seeking approval for the sale contemplated by the "Residential Purchase Agreement and Joint Escrow Instructions" attached hereto as Exhibit A.

5. The proposed buyer has offered a higher price than any other proposed buyer and is unrelated to me.

6. I have had no prior or other dealings with the proposed buyer whether financial or otherwise.

7. I believe that the buyer's offer constitutes the best offer obtainable although I do not intend to oppose any reasonable overbidding procedure that may be imposed by the Court.

8. By executing this declaration, I do not waive and expressly assert and preserve all rights, claims, and privileges under the United States Constitution relating to statements or testimony that may tend to incriminate me.

I declare that the foregoing is true under penalty of perjury under the laws of the United States.

Executed on September 11, 2007.

/s/ Edward S. Ehee

Edward S. Ehee

FROM : FAX NO. : Oct. 10 2003 10:41AM P2

CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

**For Use With Single Family Residential Property — Attached or Detached**
**(C.A.R. Form RPA-CA, Revised 10/02)**

Date *July 22, 2007*, at *Oakland*, California.

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *Mi Cha Oh, Byung Ryul Oh* ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as *6122 Acacia, Oakland CA 94618*, Assessor's Parcel No. *048A710703103*, situated in *Oakland*, County of ______, California, ("Property").
   C. **THE PURCHASE PRICE** offered is *One Million Three Hundred Forty-Five Thousand* Dollars $ *1,345,000.00* *60*
   D. **CLOSE OF ESCROW** shall occur on *September 7, 2007* (date) (or ☒ *45* Days After Acceptance).
2. **FINANCE TERMS:** Obtaining the loans below **is a contingency** of this Agreement unless: **(i)** either 2K or 2L is checked below; or **(ii)** otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs **is not a contingency.** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . $ *5,000.00* to the agent submitting the offer (or to ☐ ______ ), by personal check (or ☐ ______ ), made payable to *Fidelity National Title Co.*, which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance (or ☐ ______ ), with Escrow Holder, (or ☐ into Broker's trust account).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ *35,350.00* within ______ Days After Acceptance, or ☒ *Upon removal inspection contingency*.
   C. **FIRST LOAN IN THE AMOUNT OF** . . . $ *1,028,000.00*
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum interest of ______ % fixed rate, or ______ % initial adjustable rate with a maximum interest rate of ______ %, balance due in ______ years, amortized over ______ years. Buyer shall pay loan fees/points not to exceed ______. (These terms apply whether the designated loan is conventional, FHA or VA.)
      (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.) Seller shall pay ______ % discount points. Seller shall pay other fees not allowed to be paid by Buyer, ☐ not to exceed $ ______. Seller shall pay the cost of lender required Repairs (including those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed $ ______. (Actual loan amount may increase if mortgage insurance premiums, funding fees or closing costs are financed.)
   D. **ADDITIONAL FINANCING TERMS:** ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, . . . $ ______ (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)
   E. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of . . $ *276,650.00* to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** . . . $ *1,345,000.00*
   G. **LOAN APPLICATIONS:** Within **7 (or ☐ ______ ) Days** After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within **7 (or ☐ ______ ) Days** After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. **LOAN CONTINGENCY REMOVAL:** (i) Within **17 (or ☐ ______ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; **OR (ii)** (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (**OR**, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within **17 (or ☐ ______ ) Days** After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within **17 (or ______ ) Days** After Acceptance.
   K. ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☐ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within **7 (or ☐ ______ ) Days** After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. **Seller-occupied or vacant property:** Occupancy shall be delivered to Buyer at *5:00* ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on ______ ; or ☒ no later than *2* **Days** After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

Buyer's Initials ( *M. O.* ) ( *B. R.* )
Seller's Initials ( [signature] ) ( ______ )
Reviewed by ______ Date ______

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

RPA-CA REVISED 10/02 (PAGE 1 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)

EQUAL HOUSING OPPORTUNITY

Agent: john lee Phone: 5109861006 Fax:
Broker: Bay Properties 460 Boulevard Wy., Oakland CA 94610
Prepared using WINForms® software

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00001

Property Address: *6122 Acacia, Oakland CA 94618* Date: *July 22, 2007*

C. **Tenant-occupied property: (i) Property shall be vacant** at least 5 (or ☐ ______) **Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

OR (ii) (if checked) ☐ **Tenant to remain in possession.** The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR (iii) (if checked) ☐ **This Agreement is contingent** upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS** (If checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**

(1) ☒ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by ______, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas ______. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ **(If checked)** The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**

(1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected ______.
(2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity ______.
(3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by ______.
(4) ☐ Buyer ☐ Seller shall pay for the following inspection or report ______.
(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report ______.

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. ______.

D. **ESCROW AND TITLE:**

(1) ☒ Buyer ☐ Seller shall pay escrow fee ______.
Escrow Holder shall be *Fidelity National Title Co.*
(2) ☒ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12E ______.
Owner's title policy to be issued by *Fidelity National Titel Co*
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. **OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee ______.
(2) ☒ Buyer ☒ Seller shall pay City transfer tax or transfer fee *1/2 each*
(3) ☐ Buyer ☐ Seller shall pay HOA transfer fee ______.
(4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees ______.
(5) ☒ Buyer ☐ Seller shall pay the cost, not to exceed $ *450.00*, of a one-year home warranty plan, issued by *Buyer's choice*, with the following optional coverage: ______.
(6) ☐ Buyer ☐ Seller shall pay for ______.
(7) ☐ Buyer ☐ Seller shall pay for ______.

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: **(i)** Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and **(ii)** disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordnance location disclosure (C.A.R. Form SSD).

(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

Buyer's Initials ( M.C. ) ( B. R )
Seller's Initials ( [signature] ) ( ______ )

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ______ Date ______

Micha Oh.zfx

Property Address: *6122 Acacia, Oakland CA 94618* Date: *July 22, 2007*

**(4)** If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After delivery in person, or **5 Days** After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

**(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.**

**B. NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. DATA BASE DISCLOSURE:** NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

**6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

**A. SELLER HAS: 7 (or ☐ ______________ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

**B.** If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has **3 (or ☐ _________ )** **Days** After Acceptance to request from the HOA (C.A.R. Form HOA): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**7. CONDITIONS AFFECTING PROPERTY:**

**A.** Unless otherwise agreed: **(i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

**B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).**

**C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.**

**8. ITEMS INCLUDED AND EXCLUDED:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in 8B or C.

**B. ITEMS INCLUDED IN SALE:**

**(1)** All EXISTING fixtures and fittings that are attached to the Property;

**(2)** Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and

**(3)** The following items: ______________________________

**(4)** Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

**(5)** All items included shall be transferred free of liens and without Seller warranty.

**C. ITEMS EXCLUDED FROM SALE:** *All patio items:Grill,outdoor heater,tables ,chairs and bench. Refregerator in garage,window treatment in children'room,drapes,sconces in the dining room.*

**9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property; and **(v)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**B.** Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ( [initials] ) ( B. R. )
Seller's Initials ( [initials] ) ( __________ )

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ____________ Date ____________

EQUAL HOUSING OPPORTUNITY

Micha Oh.zfx

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00003

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

10. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** Repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. **TITLE AND VESTING:**

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**

A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).**

A. **SELLER HAS: 7 (or ☐ ____________ ) Days** After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.

B. **(1) BUYER HAS: 17 (or ☐ ____________ ) Days** After Acceptance, unless otherwise agreed in writing, to:

**(i)** complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and

**(ii)** return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

**(2)** Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

**(3)** By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if **(i)** government-mandated inspections/ reports required as a condition of closing; or **(ii)** Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has **5 (or ☐ ________________ ) Days** After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.

C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

**(1) Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

**(2) Continuation of Contingency:** Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

**(3) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: **(i)** if Buyer fails to deposit funds as required by 2A or 2B; **(ii)** if the funds deposited pursuant to 2A or 2B are not good when deposited; **(iii)** if Buyer fails to provide a letter as required by 2G; **(iv)** if Buyer fails to provide verification as required by 2H or 2L; **(v)** if Seller reasonably disapproves of the verification provided by 2H or 2L; **(vi)** if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or **(vii)** if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. **Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.**

**(4) Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: **(i)** be in writing; **(ii)** be signed by Seller; and **(iii)** give Buyer at least **24** (or ☐ ________ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than **2 Days** Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( MG ) ( B R )
Seller's Initials ( [illegible] ) ( ________ )

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ____________ Date ____________

EQUAL HOUSING OPPORTUNITY

Micha Oh.zfx

FROM : FAX NO. : Oct. 10 2007 10:45AM P6

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within **5 (or __________) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 7A; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**

**BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**

Buyer's Initials M.C. / B. R Seller's Initials EE / ____

17. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

**(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.**

**(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials M.C. / B. R Seller's Initials EE / ____

Buyer's Initials ( MC ) ( B. R )
Seller's Initials ( EE ) ( ____ )
Reviewed by ______ Date ______
EQUAL HOUSING OPPORTUNITY

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 5 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)
Micha Oh.zfx
Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00005

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.
19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).
20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.
21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.
23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.
24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
25. **OTHER TERMS AND CONDITIONS**, including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: )
    C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. ______
26. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days, unless otherwise required by Law.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours **(or as otherwise specified in paragraph 14C(4))** to remove a contingency or perform as applicable.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. **Singular and Plural** terms each include the other, when appropriate.

Buyer's Initials ( MC ) ( B · R )
Seller's Initials ( ) ( )
Reviewed by
Date
EQUAL HOUSING OPPORTUNITY

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.



# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

**For Use With Single Family Residential Property — Attached or Detached**
**(C.A.R. Form RPA-CA, Revised 10/02)**

Date *July 22, 2007*, at *Oakland*, California.

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *Mi Cha Oh, Byung Ryul Oh* ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as *6122 Acacia, Oakland CA 94618* , Assessor's Parcel No. *048A710703103*, situated in *Oakland*, County of ______, California, ("Property").
   C. **THE PURCHASE PRICE** offered is *One Million Three Hundred Forty-Five Thousand* Dollars $ *1,345,000.00* *60*
   D. **CLOSE OF ESCROW** shall occur on *September 7, 2007* (date) (or ☒ *45* Days After Acceptance).
2. **FINANCE TERMS:** Obtaining the loans below **is a contingency** of this Agreement unless: **(i)** either 2K or 2L is checked below; or **(ii)** otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs **is not a contingency.** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . . . . $ *5,000.00*
   to the agent submitting the offer (or to ☐ ______), by personal check (or ☐ ______), made payable to *Fidelity National Title Co.*, which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance (or ☐ ______), with Escrow Holder, (or ☐ into Broker's trust account).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ *35,350.00*
   within ______ Days After Acceptance, or ☒ *Upon removal inspection contingency*.
   C. **FIRST LOAN IN THE AMOUNT OF** . . . . . . $ *1,028,000.00*
   (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum interest of ______ % fixed rate, or ______ % initial adjustable rate with a maximum interest rate of ______ %, balance due in ______ years, amortized over ______ years. Buyer shall pay loan fees/points not to exceed ______. (These terms apply whether the designated loan is conventional, FHA or VA.)
   (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.)
   Seller shall pay ______ % discount points. Seller shall pay other fees not allowed to be paid by Buyer, ☐ not to exceed $ ______. Seller shall pay the cost of lender required Repairs (including those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed $ ______. (Actual loan amount may increase if mortgage insurance premiums, funding fees or closing costs are financed.)
   D. **ADDITIONAL FINANCING TERMS:** ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, . . . . . $ ______
   (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)
   E. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of . . $ *276,650.00*
   to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** . . . . . . $ *1,345,000.00*
   G. **LOAN APPLICATIONS:** Within **7** (or ☐ ______) **Days** After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within **7** (or ☐ ______) **Days** After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. **LOAN CONTINGENCY REMOVAL:** (i) Within **17** (or ☐ ______) **Days** After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; **OR (ii)** (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (**OR**, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within **17** (or ☐ ______) **Days** After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within **17** (or ______) **Days** After Acceptance.
   K. ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☐ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within **7** (or ☐ ______) **Days** After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. **Seller-occupied or vacant property:** Occupancy shall be delivered to Buyer at *5:00* ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on ______; or ☒ no later than *2* **Days** After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

Buyer's Initials ( *M. C.* ) ( *B. R.* )
Seller's Initials ( [signature] ) ( ______ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by ______ Date ______

EQUAL HOUSING OPPORTUNITY

| Agent: john lee | Phone: 5109851436 | Fax: | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Bay Properties | 460 Boulevard Wy., , Oakland | CA 94610 | |

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00001

Property Address: *6122 Acacia, Oakland CA 94618* Date: *July 22, 2007*

C. **Tenant-occupied property: (i) Property shall be vacant** at least 5 (or ☐ ______ ) **Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

**OR (ii)** (if checked) ☐ **Tenant to remain in possession.** The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

**OR (iii)** (if checked) ☐ **This Agreement is contingent** upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS** (If checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**

**(1)** ☒ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by ______________________, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas ______________________. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

**OR (2)** ☐ **(If checked)** The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**

**(1)** ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected ______________________.

**(2)** ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity ______________________.

**(3)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by ______________________.

**(4)** ☐ Buyer ☐ Seller shall pay for the following inspection or report ______________________.

**(5)** ☐ Buyer ☐ Seller shall pay for the following inspection or report ______________________.

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**

**(1)** ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.

**(2)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. ______________________.

D. **ESCROW AND TITLE:**

**(1)** ☒ Buyer ☐ Seller shall pay escrow fee ______________________.
Escrow Holder shall be *Fidelity National Title Co.*

**(2)** ☒ Buyer ☐ Seller shall pay for **owner's** title insurance policy specified in paragraph 12E ______________________.
Owner's title policy to be issued by *Fidelity National Titel Co*
(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

E. **OTHER COSTS:**

**(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee ______________________.

**(2)** ☒ Buyer ☒ Seller shall pay City transfer tax or transfer fee *1/2 each*

**(3)** ☐ Buyer ☐ Seller shall pay HOA transfer fee ______________________.

**(4)** ☐ Buyer ☐ Seller shall pay HOA document preparation fees ______________________.

**(5)** ☒ Buyer ☐ Seller shall pay the cost, not to exceed $ *450.00* ______________________, of a one-year home warranty plan, issued by *Buyer's choice* ______________________, with the following optional coverage: ______________________.

**(6)** ☐ Buyer ☐ Seller shall pay for ______________________.

**(7)** ☐ Buyer ☐ Seller shall pay for ______________________.

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. **(1)** Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: **(i)** Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and **(ii)** disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordnance location disclosure (C.A.R. Form SSD).

**(2)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

**(3)** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

Buyer's Initials ( MC ) ( B. R )
Seller's Initials ( [signature] ) ( ______ )

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: *6122 Acacia, Oakland CA 94618* Date: *July 22, 2007*

**(4)** If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After delivery in person, or **5 Days** After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

**(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.**

**B. NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. DATA BASE DISCLOSURE:** NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

**6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

**A. SELLER HAS: 7 (or ☐ ______________ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

**B.** If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has **3 (or ☐ _________ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**7. CONDITIONS AFFECTING PROPERTY:**

**A.** Unless otherwise agreed: **(i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

**B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).**

**C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.**

**8. ITEMS INCLUDED AND EXCLUDED:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in 8B or C.

**B. ITEMS INCLUDED IN SALE:**

**(1)** All EXISTING fixtures and fittings that are attached to the Property;

**(2)** Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and

**(3)** The following items: ______________________________

**(4)** Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

**(5)** All items included shall be transferred free of liens and without Seller warranty.

**C. ITEMS EXCLUDED FROM SALE:** *All patio items:Grill,outdoor heater,tables ,chairs and bench. Refregerator in garage,window treatment in children'room,drapes,sconces in the dining room.*

**9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property; and **(v)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**B.** Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ( M.G. ) ( B. R )
Seller's Initials ( [signature] ) ( ________ )

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ____________ Date ____________

EQUAL HOUSING OPPORTUNITY

Micha Oh.zfx

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00003

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

10. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** Repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. **TITLE AND VESTING:**

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**

A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).**

A. **SELLER HAS: 7 (or ☐ ____________ ) Days** After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.

B. **(1) BUYER HAS: 17 (or ☐ ____________ ) Days** After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
(ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

**(2)** Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

**(3)** By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if **(i)** government-mandated inspections/ reports required as a condition of closing; or **(ii)** Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has **5 (or ☐ ________________ ) Days** After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.

C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

**(1) Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

**(2) Continuation of Contingency:** Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

**(3) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: **(i)** if Buyer fails to deposit funds as required by 2A or 2B; **(ii)** if the funds deposited pursuant to 2A or 2B are not good when deposited; **(iii)** if Buyer fails to provide a letter as required by 2G; **(iv)** if Buyer fails to provide verification as required by 2H or 2L; **(v)** if Seller reasonably disapproves of the verification provided by 2H or 2L; **(vi)** if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or **(vii)** if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. **Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.**

**(4) Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: **(i)** be in writing; **(ii)** be signed by Seller; and **(iii)** give Buyer at least **24** (or ☐ ________ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than **2 Days** Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( [signature] ) ( B R )
Seller's Initials ( [signature] ) ( ________ )

**Exhibit A , In re Ehee**
**U.S. Dist. Ct. N.D. Cal.**
**Pge. 00004**

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within **5 (or ______________ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 7A; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**

**BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**

Buyer's Initials M.C. / B.R Seller's Initials ZZ / ______

17. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

**(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.**

**(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials M.C. / B.R Seller's Initials ZZ / ______

Buyer's Initials ( M.C. ) ( B.R )
Seller's Initials ( ZZ ) ( ______ )

Reviewed by ______________ Date ______________

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

EQUAL HOUSING OPPORTUNITY

Micha Oh.zfx

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00005

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.
19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).
20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.
21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.
23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.
24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
25. **OTHER TERMS AND CONDITIONS**, including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: )
    C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. ______
26. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days, unless otherwise required by Law.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours **(or as otherwise specified in paragraph 14C(4))** to remove a contingency or perform as applicable.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. **Singular and Plural** terms each include the other, when appropriate.

Buyer's Initials ( MC ) ( B·R )
Seller's Initials ( ) ( )
Reviewed by Date
EQUAL HOUSING OPPORTUNITY

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

**27. AGENCY:**

**A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

**B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

**C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent Bay Properties (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
Selling Agent ______________ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within **3** business days after Acceptance (or ☐ ______________). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: **(i)** if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **2** business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials ( MO ) ( B.R. )
Seller's Initials ( [signature] ) ( ______ )

Copyright © 1991-2005, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ______ Date ______

EQUAL HOUSING OPPORTUNITY

Micha Oh.zfx

Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00007

FROM : FAX NO. : Oct. 10 2007 10:47AM P9

Property Address: 6122 Acacia, Oakland CA 94618 Date: July 22, 2007

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by John R.Lee, who is authorized to receive it by 5:00 PM on the third calendar day after this offer is signed by Buyer (or, if checked, ☐ by ______ (date), at ______ ☐ AM ☐ PM).

Date 7/22/07
BUYER [signature]
Mi Cha Oh
(Print Name)

Date 7/22/07
BUYER [signature]
Byung Ryul Oh
(Print Name)

(Address)

32. **BROKER COMPENSATION FROM SELLER:**
A. Upon Close Of Escrow, **Seller** agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
B. If escrow does not close, compensation is payable as specified in that separate written agreement.

33. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.

☐ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** ______

Date 8/8/07
SELLER [signature]
Edward Ehee
(Print Name)

Date
SELLER
(Print Name)

(Address)

( ____ / ____ ) (Initials) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent on (date) ______ at ______ ☐ AM ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

**REAL ESTATE BROKERS:**
A. **Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
B. **Agency relationships are confirmed as stated in paragraph 27.**
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: **(i)** the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or **(ii)** ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) BAY Properties
By [signature] Bay Properties Date
Address 296 Mather St. #1, City Oakland State CA Zip 94611
Telephone (510)350-8885 Fax (510)350-8886 E-mail Baypr60@yahoo.com

Real Estate Broker (Listing Firm) Bay Properties
By Date
Address City State Zip
Telephone Fax E-mail

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ ______ ), counter offer numbers ______ and ______, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is ______

Escrow Holder ______ Escrow # ______
By ______ Date ______
Address
Phone/Fax/E-mail
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # ______

( ____ / ____ ) (Seller's Initials) **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on ______ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

SURE TRAC
The System for Success

Published by the California Association of REALTORS®
Reviewed by ______ Date ______
EQUAL HOUSING OPPORTUNITY
RPA-CA REVISED 10/02 (PAGE 8 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)
Micha Oh.zfx
Exhibit A , In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00008



CALIFORNIA ASSOCIATION OF REALTORS®

# BUYER'S INSPECTION ADVISORY

(C.A.R. Form BIA, Revised 10/02)

Property Address: *6122 Acacia, Oakland CA 94618* ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**

1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)
2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)
3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.
4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( MG ) ( B·R )
Seller's Initials ( ) ( )
Reviewed by ______ Date ______

Exhibit A, In re Ehee
U.S. Dist. Ct. N.D. Cal.

| Agent: john lee | Phone: 5108851446 | Fax: | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Bay Properties | 460 Boulevard Wy., , Oakland | CA 94610 | |

Property Address: *6122 Acacia, Oakland CA 94618* Date: *July 22, 2007*

5. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
7. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. **WATER AND UTILITES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants; and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(x)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.**

| | | | |
|---|---|---|---|
| [signature] | 7/22/07 | [signature] | 7/22/07 |
| Buyer Signature *Mi Cha Oh* | Date | Buyer Signature *Byung Ryul Oh* | Date |
| [signature] | 8/8/07 | | |
| Seller Signature *Edward Ehee* | Date | Seller Signature | Date |

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

SURE TRAC The System for Success™
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ______ Date ______

EQUAL HOUSING OPPORTUNITY

Exhibit A - In re Ehee
U.S. Dist. Ct. N.D. Cal.
Pge. 00010